Gregory W. Mitchell
FREEMAN LAW, PLLC
1412 Main Street
Suite 625
Dallas, Texas  75202
(972)463-8417 – Office
(972)432-7540 – Facsimile
State Bar ID:  00791285

PROPOSED ATTORNEYS FOR DEBTORS

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| In re: **Earthsnap, Inc.** | § | Case No. 24-60363 |
| | § | |
| *Debtor* | § | Chapter 11, Subchapter V |
| | § | |
| | § | (Jointly Administered) |
| | § | |
| **In re:  Eric Ralls** | § | Case No. 24-60504 |
| | § | |
| *Debtor* | § | Chapter 11, Subchapter V |
| | § | |

## DEBTORS' FIRST AMENDED
## CONSOLIDATED PLAN AND DISCLOSURE STATEMENT

Earthsnap, Inc. ("**Earthsnap**") and Eric Ralls ("**Ralls**") (Earthsnap and Ralls, collectively "**Debtors**" or individually, a "**Debtor**") propose the following Consolidated Plan of Reorganization ("**Plan**") dated **April 13, 2025**.  The profitability to fund the Plan is based on the amount of money that it will earn, along with funding from a related entity as described more fully herein.

Debtors will file periodic financial reports with the Court as required by the Code covering its profitability, projections of cash receipts and disbursements for a reasonable period and a comparison of actual cash receipts and disbursements with projections in prior reports.  These reports shall be available on the Court's PACER site at www.txeb.uscourts.gov using Debtors' names and/or case number as referenced above. Such information may also be obtained from the Debtors or their counsel.

**Dated: April 10, 2025.**                    Respectfully submitted,

**FREEMAN LAW, PLLC**

*/s/ **Gregory W. Mitchell***
Gregory W. Mitchell
State Bar No. 00791285
Freeman Law, PLLC
1412 Main Street, Suite 500
Dallas, Texas  75202
(972) 463-8417 – Phone
(972) 432-7540 – Facsimile
gmitchell@freemanlaw.com – E-mail
PROPOSED ATTORNEY FOR DEBTORS

# TABLE OF CONTENTS

**DEBTOR'S FIRST AMENDED CONSOLIDATED  PLAN AND
DISCLOSURE STATEMENT** ........................................................................ **3**

**FACTUAL BACKGROUND** .............................................................................. **3**

**1. Defined Terms and Rules of Interpretation** ............................................ **5**
a. Rules of Interpretation and Construction ...................................................... 5
b. Defined Terms ................................................................................................ 5

**2. Background** ................................................................................................. **10**
a. Overview of the Debtor and Related Affiliates ............................................. 10
b. Services ......................................................................................................... 12
c. Market and Customers .................................................................................. 12

**3. General Terms and Conditions** ................................................................ **12**
a. Certain Federal Income Tax Consequences ................................................. 12
b. Alternate Combined Plan and Disclosure Statement.................................... 13
c. Best Interests Test ......................................................................................... 13

**4. Liquidation Analysis** ................................................................................ **14**

**5. Feasibility** .................................................................................................. **15**

**6. Sources of Information Provided** ............................................................. **16**

**7. Condition and Performance of Debtor While in Chapter 11** ................. **16**

**8. Future Management of Debtor and Compensation of Management and
Insiders** ...................................................................................................... **16**

**9. Details Regarding the Plan's Funding & Capital Needs** ..................... **16**

**10. Risk Factors** ............................................................................................. **16**
a. Bankruptcy Law Considerations ................................................................... 17
(1)    Parties in Interest May Object to the Plan's Classification of Claims and Interests
17
(2)    The Debtor's Ability to Secure Confirmation of the Plan ................................. 17

(3)   Nonconsensual Confirmation ........................................................................ 18
(4)   Continued Risk After Confirmation ............................................................. 18
(5)   The Chapter 11 Cases May Be Converted to Cases under Chapter 7 of the
Bankruptcy Code ........................................................................................... 19
(6)   Debtors May Object to the Amount or Classification of a Claim .................... 19
(7)   Risks of Non-Occurrence of the Effective Date ............................................ 19
(8)   Contingencies Could Affect Votes of Impaired Classes to Accept or Reject the
Plan ............................................................................................................... 19
b. Other Risks ........................................................................................................ 20
(1)   The Reorganized Debtor May Not Be Able to Achieve Their Projected Financial
Results ........................................................................................................... 20
(2)   Debtors May Have Liquidity Needs ............................................................. 21
(3)   The Debtor Operates in a Competitive Industry ............................................ 22
(4)   The Reorganized Debtor May be Adversely Affected by Potential Litigation .... 22
(5)   Certain Claims May Not Be Discharged and Could Have a Material Adverse
Effect on the Debtor's Financial Condition and Results of Operations ................. 22

**11. Summary of the Debtors' Assets and Treatment of Claims and Equity
Interests ........................................................................................................... 22**
a. Summary of Assets ............................................................................................ 23
b. Summary of the Plan of Reorganization ............................................................. 23
c. Administrative and Priority Claims .................................................................... 23
d. Summary of Treatment of Claims and Equity Interests ....................................... 25

1.   Class 1: Claims of PlantSnap, Inc. and DEJ Partners, LLC ........................ 26
2.   Class 2: Secured Claim of Ally Bank ......................................................... 26
3.   Class 3:  Claim of Brian Funk .................................................................. 26
4.   Class 4: Unsecured Claims (POC Timely Filed) ........................................ 26
5.   Class 5: General Unsecured Creditors-Scheduled but no POC. .................. 26
6.   Class 6:  Equity Interests of Eric Ralls and H1 Investment ........................ 26

**12. Executory Contracts and Leases ................................................................ 27**

**13. Injunction ...................................................................................................... 27**

**14. Claims Objections ........................................................................................ 27**

**15. Confirmation Procedure .............................................................................. 28**
a. Hearing .............................................................................................................. 28
b. Procedure for Objecting ..................................................................................... 28
c. Requirements for Confirmation .......................................................................... 28
d. Classification of Claims and Equity Interests ..................................................... 29
f. Eligibility to Vote on the Plan ............................................................................ 29
g. Voting Deadline ................................................................................................. 29

h. Acceptance of the Plan ........................................................................................ 30

**16. Provisions Governing Distributions ............................................................. 30**
a. Method of Payment ............................................................................................ 30
b. Distribution Agent ............................................................................................. 30
**a.** Distributions ................................................................................................... 31
**b.** Rule for Disputed Claims ............................................................................... 31
**c.** Undeliverable Distributions and Unclaimed Property ................................... 31

**17. Effect of Confirmation of the Plan ............................................................. 32**

**18. Miscellaneous Provisions ............................................................................. 33**
a. Binding Effect ................................................................................................... 33
b. Headings ............................................................................................................ 33
c. Termination of Injunctions or Stays ................................................................. 33
d. Amendment or Modification of the Plan .......................................................... 33
e. Severability ........................................................................................................ 34
f. Revocation or Withdrawal of the Combined Plan and Disclosure Statement ........ 34
g. Exhibits and Schedules ..................................................................................... 34
h. No Admissions .................................................................................................. 34
i. Successors and Assigns ...................................................................................... 34
j. Implementation .................................................................................................. 35
k. Inconsistency...................................................................................................... 35

## NOTICE

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS, THE DEBTORS' FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT. THIS FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT WAS SUBSTANTIALLY COMPILED FROM THE DEBTORS' BOOKS AND RECORDS TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF.

UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF. THE DELIVERY OF THIS FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11 OF THE BANKRUPTCY CODE. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN.

NO REPRESENTATION CONCERNING THE DEBTORS OR THE VALUE OF THE DEBTORS' ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. THE DEBTORS ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN OR INCONSISTENT WITH INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE

NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

EACH HOLDER OF A CLAIM OR EQUITY INTEREST SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN. HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| In re: **Earthsnap, Inc.** | § | **Case No. 24-60363** |
| | § | |
| *Debtor* | § | **Chapter 11, Subchapter V** |
| | § | |
| | § | **(Jointly Administered)** |
| | § | |
| In re: **Eric Ralls** | § | **Case No. 24-60504** |
| | § | |
| *Debtor* | § | **Chapter 11, Subchapter V** |

**DEBTORS' FIRST AMENDED
CONSOLIDATED  PLAN AND DISCLOSURE STATEMENT**

## FACTUAL BACKGROUND

1.      **Earthsnap, Inc**. On June 17th, 2024 (the "**Petition Date**"), the corporate Debtor,

Earthsnap, Inc. ("**Earthsnap**") filed a voluntary petition for relief under Subchapter V,  Chapter 11

of Title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy

Court for the Eastern District of Texas, Tyler Division (the "**Bankruptcy Court**").  Without

extenuated circumstances, the plan was due within ninety (90) days of the filing, or by September 17,

2024.

2.      On June 24, 2024, the Meeting of Creditors 341(a) meeting was noticed to be held

on July 24, 2024. [Dkt. No. 3].

3.      On June 27, 2024, the Notice of Status conference was set for August 6, 2024

[Dkt. #5].  Debtor duly filed a plan status report [Dkt.#20], and status conference was held  on the

scheduled date.

4.      On July 2nd, 2024, Earthsnap filed its original, schedules, 20 largest creditors, and

statements of affairs [Dkt. Nos. 7, 8, and 9].

5.       On July 22, 2024, the Debtor filed an amended petition, schedules, statement of affairs, and creditor matrix [Dkt. Nos. 12-15].

6.       On July 30, 2024, an application to Employ Kevin S. Wiley, Sr was filed [Dkt. #18]. The order approving the application was entered  September 3, 2024. [Dkt.#31].

7.       **Eric Ralls**. On August 18, 2024, an affiliate and related debtor, filed an individual petition for reorganization under Subchapter V, Chapter 11 of Title 11. The related debtor, Eric Ralls ("**Ralls**") (Earthsnap and Ralls collectively "**Debtors**", or individually a "**Debtor**"), owns 86% of a related entity described herein, which in turn owns 100% of voting stock of Earthsnap.  Ralls was threatened with a pre-judgment seizure of this stock based on claims against Earthsnap and all related affiliates described herein.

8.       On August 27, 2024, Earthsnap filed a petition for joint administration [Dkt.#28]. This motion was granted by Order entered October 7, 2024 (Dkt. No. 50).

**Factual Background**

9.       Debtors each qualify as small business debtors pursuant to Section 101 of the Bankruptcy Code, and are qualified to elect Subchapter V.

10.       Earthsnap owns an application for patent-pending processes focused on nature, the preservation of species, and the global environment. The patent application was filed, but to date has not been approved or granted. However, now that affiliate Earth.com, Inc. has funding from other affiliates as described herein, the process for completion of the Patent has been renewed, and the development agreement is to remain on Amazon servers ("**AWS**").

This is Debtors' First Amended Combined Plan and Disclosure Statement (the "**Plan**"). Debtors are the proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code.  Under Subdivision V of Chapter 11, Title 11, this disclosure statement is provided at the option of the Debtors for additional information to their creditors, that while not required under

that statute, will assist the creditors in determining whether to consent to confirmation of the Plan.

It is contemplated that this will be a 100% plan.

## 1. Defined Terms and Rules of Interpretation

### a.  Rules of Interpretation and Construction

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender, (ii) any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference to any existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (iv) unless otherwise specified, all references to "sections" are references to or sections hereof in the Debtor's Plan; (v) the words "herein," "hereof" and "hereto" refer to the Debtor's Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to sections or subsections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation hereof; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form herein that is not otherwise defined shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in the computing any period of time prescribed or allowed hereby.

### b.  Defined Terms

Unless the context otherwise requires, the following capitalized terms used in this Plan shall have the meanings set forth below:

1.    "*Administrative Expense Claim*" means a Claim for costs and expenses of administration of the estate, including: (a) the actual and necessary cost and expenses incurred after each Debtor's respective Petition Date and through the Effective Date of presenting the Estates and operating the business of the Debtor, (b) professional fee Claims, and (c) statutory see Claims.

2.    "*Affiliate*" means, with respect to any Entity, "affiliate" as defined in section 101(2) of the Bankruptcy Code.

3.    "*Allowed*" means, with reference to any Claim (i) any Claim against a Debtor which has been listed by that Debtor in its Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (ii) any Claim or Equity Interest arising on or before the Effective Date for which a Proof of Claim has been timely filed before the applicable bar date (x) as to which no objection to allowance has been interposed or (y) as to which any objection has been determined by a final order to the extent such objection is determined in favor of the respective Holder, (iii) any Claim or Equity Interest as to which the liability of the Debtor and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court and for which a Proof of Claim has been timely Filed before the applicable bar date, or (iv) any Claim expressly Allowed hereunder or pursuant to an Order of the Bankruptcy Court; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, punitive damages or any fine or penalty on such Administrative Expense Claim or Allowed Claim from and after the Petition Date. Unless otherwise provided in an Order of the Bankruptcy Court, for purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtor may hold or assert against the Holder thereof, to the extent such claim may be set off pursuant to sections 502(d) or 553 of the Bankruptcy Code.

4.    "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Effective Date to prosecute such Claims or Causes of Action.

5.    "*Ballot*" means the ballot forms distributed with the Plan to Holders of Impaired Claims entitled to vote in connection with the solicitation of acceptances of the Plan.

6.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101- 1532

and Chapter V thereof.

7. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Texas having jurisdiction over these Chapter 11 Cases.

8. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure.

9. "*Books and Records*" means those books, records and financial systems of the Debtors, including any and all documents and any and all computer generated or computer-maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in the possession of third parties, wherever located.

10. "*Business Day*" means any day, other than a Saturday, Sunday or a "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

11. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

12. "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, in each case held by a Debtor, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date, or during the course of the Chapter 11 Cases through the Effective Date.

13. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case filed for the Debtor under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

14. "*Claim*" means any claim (as defined in section 101(5) of the Bankruptcy Code) against a Debtor.

15. "*Class*" means a category of Holders of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code.

16. "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the Docket of the Chapter 11 Cases.

17. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the Docket of the Chapter 11 Cases.

18. "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of Debtors' plan of reorganization pursuant to this First Amended Combined Plan

and Disclosure Statement, as such hearing may be adjourned or continued from time to time.

19.    "*Confirmation Order*" means the Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

20.    "*Contested*" (when used with respect to a Claim) means a Claim against a Debtor (a) if no Proof of Claim was filed, a claim that is listed in a Debtor's Schedule of Assets and Liabilities as disputed, contingent, or unliquidated and that is not allowed pursuant to this Plan; (b) a claim that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) if a Proof of Claim was filed, a claim as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

21.    "*Creditor*" means any Entity that is the Holder of an Allowed Claim against either of the Debtor.

22.    "*Debtor*" means a Debtor, in its/his capacity as a debtor and debtor-in-possession.

23.    Reserved.

24.    "*Disputed*" means every Claim, or any portion thereof, that has not been Allowed pursuant to the Plan or a final order of the Bankruptcy Court and:

    i.    if a Proof of Claim has been timely filed by the applicable Bar Date, such Claim is designated on the Debtors' schedules as unliquidated, contingent, or disputed, or in zero or unknown amount, and has not been resolved by written agreement of the parties or a final order of the Bankruptcy Court;

    ii.    if either (1) a Proof of claim has been timely filed by the applicable bar date or (2) a Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, or in zero or unknown amount, a Claim (i) as to which either Debtor has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and orders of the Bankruptcy Court, in each case which objection, request for estimation or dispute has not been withdrawn, overruled or determined by a final order;

    iii.    that is the subject of an objection or request for estimation filed in the Bankruptcy Court and which such objection or request for estimation has not been withdrawn, resolved, or overruled by final order of the Bankruptcy Court; or

iv.    That is otherwise disputed by the Debtor in accordance with the provision of the Plan or applicable law, which dispute has not been withdrawn, resolved, or overruled by final order.

25.    "*Distribution*" means any distribution to the Holders of Allowed Claims.

26.    "*Effective Date*" means the first Business Day after the Confirmation Date. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

26.    "*Entity*" has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

27.    "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership interest or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, and all rights arising with respect thereto that existed immediately before the Effective Date.

28.    "*Estate*" means, as to a Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

29.    "*Executory Contract*" means a contract, as it may have been amended, restated, or otherwise modified and including any codicils, amendments, exhibits or annexes thereto, if any, to which one or more of the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

30.    "*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

31.    "*Governmental Unit*" has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

32.     "*Holder*" means the beneficial holder of a Claim or Equity Interest.

33.     "*Impaired*" means, with reference to any Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

34.     "*Intercompany Claims*" means, collectively, any Claim held by a Debtor against an affiliated Entity.

35.     "*Person*" has the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

36.     "*Petition Date*" means, with respect to Earthsnap, June 17, 2024, the date on which Earthsnap filed its petition for relief commencing its Chapter 11 Case; with respect to Eric Ralls, August 18, 2024, the date on which Eric Ralls filed his petition for relief commencing his .

37.     "*Proof of Claim*" means a timely filed proof of Claim filed against a Debtor in the Chapter 11 Case.

38.     "*Reorganized Debtor*" means the Debtors, or any successor or assign thereto, by merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, spinoff, or otherwise, on and after the Effective Date.

39.     "*Retained Professional*" means an Entity employed in the Chapter 11 Case in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred in the Chapter 11 Case; or for which compensation has been Allowed by an order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

40.     "*Schedules*" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors, including any and all amendments and modifications thereto.

41.     "*Statutory Fees*" means any and all fees payable to the United States Trustee pursuant to section 1930 of the United States Code and any interest thereupon, and any fees payable to the Chapter V Trustee.

42.     "*United States Trustee*" means the United States Trustee for the Eastern District of Texas and the Chapter V Trustee appointed by the United States Trustee to administer this case.

## 2. Background

### a.   Overview of the Debtor and Related Affiliates

The corporate Debtor and related affiliates are structured as follows: All of these mentioned companies were formed after Ralls was divested of his interest in PlantSnap, Inc ("**PlantSnap**")

by PlantSnap's Board of Directors – led by DEJ Partners, LLC ("**DEJ**"),  the lead investor.

DEJ was unhappy with how Ralls  was running the company, PlantSnap, which Ralls had built from scratch over a period of 9 years.  PlantSnap, launched in 2017 after five years of development, was the  first mobile app to  use AI image recognition.  It was Ralls and his team at Earth.com that invented this PlantSnap mobile app.

Ralls readily admits that he was  very naive in signing a very one-sided investor agreement with Dan Johnson ,("Johnson")  controlling shareholder of DEJ.  Ralls contends  Johnson slowly, over time, moved to kick him  out and  take control of the company, and he eventually managed to do so.

When the PlantSnap board (led by  Johnson) removed Ralls, DEJ and PlantSnap sued Ralls.  At the time of the lawsuit, based on the valuation of the last funding round, Ralls still owned 76% of the stock in the company, which was worth $22 million at the time Ralls was removed,.  He was divested of this stock at the conclusion of the lawsuit.

After being removed, Ralls was left with nothing, because every dime he had was put back into PlantSnap over the years.  Ralls depleted resources in defendant the lawsuits.

This case was ultimately dismissed in December 2023 when Ralls had exhausted his resources and confessed to judgment on a binding term sheet treated in the Plan  as an executory contract to be assumed by the Plan.

A few months after being removed from PlantSnap, Ralls  began building the new app called EarthSnap and turned his  attention to building the website Earth.com.  Because his funds were depleted, Ralls sought investors for the new EarthSnap project.

Digital Earth Media, Inc. ("**DEM**") is a holding company that owns 100% of both EarthSnap, Inc. and Earth.com, Inc. DEM  has two shareholders:  (1) Ralls  (86%); and (2) H1 Investments, LLC ("**H1**") (14%).

Metaversal Knowledge, Inc ("**Metaversal**") is an S-Corporation that Ralls  formed whose sole job was to hire and manage  contractors to work on the Earth.com website and the EarthSnap  app.  Because  there  is so much overlap between Earth.com and EarthSnap, it made sense to have a 3rd party manager of both entities to streamline operations and avoid separate billings to contractors – 90% of which worked with both entities.

Ralls formed Greenmind, LLC to take over the management and payment responsibilities from Metaversal.  Each of these affiliates are controlled by Ralls and are signatories to the Plan Support Agreement attached as Ex. "B."

### b.  Services

Earth.com is a massive website with around 4 million pages of content – including a large amount of news and images, and including one page for every plant and animal species on Earth.

### c. Market and Customers

EarthSnap is an app similar to PlantSnap. The difference is that PlantSnap only identifies plants, but EarthSnap identifies both plants AND animals...all living things.

For example, when a user snaps a photo of a bird with the EarthSnap app, an AI algorithm on the AWS servers identify the bird.  It then sends back data to the app that includes information about the bird species.  The information about the bird species comes from the Earth.com website shared with Earth.com. Rather than create an entire new database and replicate the species information already on Earth.com, EarthSnap simply uses the Earth.com information. Earth.com is therefore a critical component of the EarthSnap app.

Therefore, Earth.com, Inc. cannot be separated from EarthSnap, Inc. during a bankruptcy restructuring. If Earth.com is harmed, then it will be impossible for EarthSnap, Inc. to restructure and earn the revenue needed to satisfy creditors.

This is ALSO the reason that Earth.com and EarthSnap share the same account on AWS...because they share all of the same content, and they are both owned by the same company, Digital Earth Media, Inc.

### 3. <u>General Terms and Conditions</u>

### a.  Certain Federal Income Tax Consequences

The confirmation and execution of this Plan may have tax consequences to Holders of Claims and Equity Interests. Debtor does not offer an opinion as to any federal, state, local or other tax consequences to holders of claims and equity interests as a result of the confirmation of this Plan. All holders of claims and equity interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of this Plan. This Plan is not intended, and should not be construed, as legal or tax advice to any creditor, equity interest holder or other party in interest. However, it is clear from existing tax rules that cancellation of any claim, right, or interest, including,

but not limited to, cancellation of contingent, disputed and unliquidated claims of the minority

shareholders, and/or cancellation of the debt owed by the Estate to the Debtor, both in response to

and in exchange for treatment under the Plan, result in no ordinary income event to the holder of the

debt under 11 U.S.C. §1146 et al. This tax result is a major incentive to the plan process in lieu of

other options.

### b.  Alternate Combined Plan and Disclosure Statement

If this Plan is not confirmed, the Debtor, or any other party in interest under original Title 11,

Chapter 11, could attempt to formulate a different plan. However, only the Debtor has the right to

formulate a plan under the Small Business Reorganization Act ("**SBRA**") under 11 U.S.C. §1189(b),

e*t seq.* This exclusive right serves to avoid additional costs – including, among other amounts,

additional professional fees – that would constitute Administrative Expense Claims (subject to

allowance) that may be so significant that one or more parties in interest could request that the Chapter

11 Cases be converted to chapter 7. The Debtor believes that conversion of these Chapter 11 Cases

to cases under Chapter 7 of the Bankruptcy Code will result in the incurrence of significant additional

fees and expenses to the detriment of the Creditors. If Debtor continues to operate, they will have

revenue to make payments to creditors in addition to the fixed payments made on the Effective Date

Accordingly, the Debtor believes that the Plan enables creditors to realize the best return under the

circumstances.

### c.  Best Interests Test

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or

Equity Interest either (a) accept the plan or (b) receive or retain under the plan property of a value, as

of the Effective Date, that is not less than the value such Holder would receive if the Debtor were

liquidated under Chapter 7 of the Bankruptcy Code. Continued operations will generate revenue by

which the Debtor will be able to make additional payments to creditors under the Plan in addition to

the fixed payments made on the Effective Date. This test of consent or receipt of not less than liquidation was the "best interest" test.

However, under SBRA, 11 U.S.C. 1191(d), this "best interest" requirement is modified to require either consent, or if no consent, the plan proposes to distribute all of the Debtor's disposable income for 3-5 years to creditors, or equal to or greater than the equivalent of this amount. The Plan satisfies this requirement by providing 100% to all Allowed Claims pursuant to the terms of this Plan.

Because of the increased expenses that would be incurred in the event of a conversion of the Chapter 11 Cases to cases under Chapter 7, the value of any Distribution to Holders of Claims or Equity Interests if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code would be less than the value of Distributions under this Plan, although this is no longer the test under SBRA for "best interest". This is because conversion of the Chapter 11 Cases to chapter 7 cases would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals. This would add additional costs to the Estates and delay compared to Distributions under this Plan. Debtors believe that the Estates would have less funds available for distribution in a hypothetical chapter 7 liquidation than they would if this Plan is confirmed, and therefore Holders of Allowed Claims will recover less in the hypothetical chapter 7 cases. Accordingly, Debtor believes that the "best interest" test of even the old Bankruptcy Code Section 1129 is satisfied, though again, meeting that version of "best interest" test is no longer required.

### 4. Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.  In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must

then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy priority Claims that are senior to general Unsecured Claims (including Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

In a forced liquidation under Chapter 7, the Debtors believe that PlantSnap and DEJ Partners would foreclose on their interest in the stock of Digital Earth Media, which in turn owns the stock of the Debtor Earthsnap and Earth.com, the source of funding of this Plan. As a result, no funds would therefore be available to pay any creditors other than PlantSnap and DEJ Partners.

In a forced liquidation under Chapter 7, therefore, the Debtor believes that a Trustee would have next to nothing to distribute to unsecured creditors.

Debtor Earthsnap's schedules reflect $1,043.67 in assets pursuant to Schedule A/B.

Debtor Eric Ralls' schedules reflect $11,501,979.00 in assets – of which $11,500,000.00 represents Debtor Eric Ralls' interest in Digital Earth Media, which would likely be extinguished based on creditors PlantSnap and DEJ Partners' security interest pursuant to the Term Sheet referenced above, thereby leaving assets of $1,979.00, all of which have been claimed as exempt property by the individual Debtor.

Based on the above values and the above summary of the Claims against the Debtor, in a Chapter 7 liquidation, $1,043.67 would be available to pay all creditors other than PlantSnap and DEJ Partners. Creditors other than PlantSnap and DEJ Partners hold claims in the estimated total amount of $1,131,396.92. Thus, in a Chapter 7 it is believed that unsecured debt in the amount of $1,131,396.92 would go unpaid. This Plan proposes to pay one hundred percent (100%) of all Allowed Secured Claims, and 100% of Allowed Unsecured Claims against the Debtors.

**5. <u>Feasibility</u>**

Section 1129(a)(11) of the Bankruptcy Code requires that Confirmation of the Plan is not likely followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successors to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. This test still appears to be a test for a Plan under Section 11 U.S.C. § 1191(a).

Since the Plan's Support Agreement handles all claims, including but not limited to the major secured, unsecured, administrative and priority tax claims, and lack of default on other current obligations, which are adequate provided for under income projections in Ex. "A," feasibility test is met.

## 6. Sources of Information Provided.

In preparing this combined plan and disclosure statement, Debtors reviewed and relied on information contained in Books and Records, and customer feedback regarding future orders and revenue.

## 7. Condition and Performance of Debtor While in Chapter 11

See Exhibit "A" for actual results from operations.

## 8. Future Management of Debtor and Compensation of Management and Insiders

The Debtors' management will continue to be led by Ralls.

## 9. Details Regarding the Plan's Funding & Capital Needs

Debtors do not intend to sell any additional capital assets to fund the Plan. With current business and anticipated future business, as reflected in the projections of **Exhibit A**, Debtors believe that they will be able to meet their financial obligations as set forth in this Plan.

## 10. Risk Factors

Holders of Claims and Equity Interests should read and consider carefully the risk factors set forth below before voting to accept or reject the Plan. Although there are many risk factors discussed

below, these factors should not be regarded as constituting the only risks present in connection with the Debtor' businesses or the Plan and its implementation.

### a. Bankruptcy Law Considerations

#### (1) Parties in Interest May Object to the Plan's Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interest in the class. The Debtors believe that the classification of the Claims and Equity Interests under the Plan complies with this requirement because the Debtors created Classes of Claims and Interests each encompassing Claims or Equity Interests, or hybrids of same, as applicable, that are substantially similar to the other Claims or Interests, as applicable, in each Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#### (2) The Debtor's Ability to Secure Confirmation of the Plan

Even with the more liberalized results of SBRA, there is no assurance that the Bankruptcy Court will confirm the plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this disclosure or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the disclosure statement, the balloting procedures, and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the other statutory requirements for Confirmation not modified by SBRA are not met. If a chapter 11 plan or reorganization is not confirmed by the Bankruptcy Court, it is unclear whether the Debtor will be able to reorganize their business and what, if anything, Holders of Allowed Claims or Equity Interests against them would ultimately receive with respect to their claims or interests.

The Debtor, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for Confirmation. Any such modifications

could result in less favorable treatment of any non-accepting Class of Claims or Interests, as well as any Class junior to such non-accepting Class, than the treatment currently provided in the Plan. Such a less favorable treatment could include a distribution of property with a lesser value than currently provided in the Plan or no distribution whatsoever under the Plan. Changes to the Plan may also delay the confirmation of the Plan and the Debtor' emergence from bankruptcy.

### (3) Nonconsensual Confirmation

As aforementioned, in the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan under SBRA that the proponent requests if the Plan proposes to distribute the "disposable income" of the Debtor or the equivalent thereof for at least three (3) years and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan therefore "does not discriminate unfairly" with respect to the dissenting impaired class(es). The Debtor believes that the Plan satisfies these requirements, and the Debtor may request such nonconsensual Confirmation in accordance with Section 1191 of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual Confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to professional compensation.

### (4) Continued Risk After Confirmation

Even if the Plan is consummated, the Debtors may continue to face a number of risks, including certain risks that are beyond their control, such as further deterioration or other changes in economic conditions, changes in the industry and potential revaluing of their assets sue to the chapter 11 proceedings.  Some of these concerns and effects typically become more acute when a case under the Bankruptcy Code continues for a protracted period without indication of how or when the case may be completed. As a result of these risks and others, there is no guarantee that a chapter 11 plan of reorganization reflecting the Plan will achieve the Debtor's goals.

**(5) The Chapter 11 Cases May Be Converted to Cases under Chapter 7 of the Bankruptcy Code**

If a bankruptcy court finds that it would be in the in the best interest of the creditors and/or the debtor in a chapter 11 case, the bankruptcy court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed to liquidate the debtor' assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in a chapter 11 plan because of (a) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) the possibility of additional expenses and Claims.

**(6) Debtors May Object to the Amount or Classification of a Claim**

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in the disclosure statement provided herein cannot be relied on by Holders of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this disclosure.

**(7) Risks of Non-Occurrence of the Effective Date**

Although the Debtor believes that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will occur since the Effective Date depends on no third parties filing an appeal of the Confirmation Order. Debtors do not believe there is a likelihood of such an appeal, or if the Confirmation Order is appealed, that the result would be a reversal of the Confirmation Order.

**(8) Contingencies Could Affect Votes of Impaired Classes to Accept or Reject the Plan**

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which would affect distributions available to Holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by Impaired Classes.

The estimated Claims and creditor recoveries set forth in this disclosure are based on various assumptions, and the actual Allowed amounts of Claims may significantly differ from the estimates. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of claims may vary from the estimated Claims contained in this disclosure. Moreover, the Debtors cannot determine with any certainty at this time the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

### b. Other Risks

#### (1) The Reorganized Debtor May Not Be Able to Achieve Their Projected Financial Results

The Reorganized Debtor may not be able to achieve their projected financial results. The financial projections set forth in this disclosure represent the Debtors' best estimate of Debtors' future financial performance, which is necessarily based on certain assumptions regarding anticipated future performance of the Reorganized Debtor's operations, as well as the domestic and world economies in general, and the industry segments in which the Debtors operate in particular. A substantial part of the risk of continued operations is negated by the Debtors providing lump sum estimated payments of actual results. Thus, if actual results are poorer, then all the risks are on the Debtors. The tradeoff for this certainly is the creditor does not benefit if operations are materially greater than projected

results.

### (2) Debtors May Have Liquidity Needs

The Debtors' ability to fund operations and capital expenditures requires a significant amount of cash. Debtors' principal sources of liquidity historically have been cash flow from operations.  If the Debtors' retention of this cash is interrupted by events in this case, or cash flow from operations decreases as a result of market conditions, demand for their services, or otherwise, the Debtors may not have the ability to expend the capital necessary to improve or maintain their current operations, resulting in decreased revenue over time.

The Debtors thus faces uncertainty regarding the adequacy of their liquidity and capital resources and during the pendency of these chapter 11 cases, may have limited access to additional financing. In addition to the cash necessary to fund ongoing operations, the Debtors have incurred significant professional fees and other costs in connections with preparing for these chapter 11 cases and expect to continue to incur significant professional fees and costs throughout. Debtors cannot guarantee that uninterrupted cash on hand and cash flow from operations will be sufficient to continue to fund their operations and allow the Debtors to satisfy obligations related to these cases until the Debtors are able to emerge from bankruptcy protection.

Debtors' long term liquidity requirements and adequacy of its capital resources are difficult to predict at this time. The Debtor's liquidity, including the ability to meet ongoing operational conditions obligations, will be dependent on, amount other things 1) successful exploitation of the global business opportunity; 2) ability to maintain adequate cash on hand; 3) ability to generate cash flow from operations; 4) ability to develop, confirm, and consummate a chapter 11 plan or other alternative restructuring transaction; and 5) the cost, duration, and outcome of the chapter 11 cases. The Debtors' ability to maintain adequate liquidity depends, in part upon industry conditions and general economic, financial, competitive, regulatory, and other factors beyond Debtor's control.

### (3) The Debtor Operates in a Competitive Industry

The Debtors operate in a competitive industry and may not be able to maintain or increase its current revenues following the emergence from these chapter 11 cases. The Debtors compete with other competing AI apps now formed and being created.  Sales revenue and market share is subject to change for various reasons, including consolidation of the Debtors' competitors through processes such as mergers and acquisitions, which could have the effect of reducing Debtors' revenues in certain markets. The Debtors' competitors may develop technology, services, or advertising media that are equal to or superior to those the Debtor provides or that achieve greater market acceptance and brand recognition than the Debtors achieve.  It is also possible that new competitors may emerge and rapidly acquire market share from the Debtors. The Debtors' ability to compete depends in part on the Debtor's ability to achieve a competitive cost structure.

### (4) The Reorganized Debtor May be Adversely Affected by Potential Litigation

The Debtors may be parties to litigation in the future, the effect of which may be detrimental to the Reorganized Debtor's finances.

### (5) Certain Claims May Not Be Discharged and Could Have a Material Adverse Effect on the Debtor's Financial Condition and Results of Operations

The Bankruptcy Code provides that the confirmation of a plan of reorganization discharges a debtor from substantially all debts arising prior to confirmation. With a few exceptions, all Claims that arise prior to the Debtor's filing of their Petitions or before confirmation of a plan of reorganization 1) would be subject to compromise and/or treatment under the plan of reorganization and/or (2) would be discharged in accordance with the terms of the plan of reorganization. However, there can be no assurance that the aggregate amount of such claims that are not subject to treatment under the Plan or that are not discharged will not be material.

### 11. Summary of the Debtors' Assets and Treatment of Claims and Equity Interests

### a. Summary of Assets

The Debtors filed schedules of all of their assets and liabilities. Such schedules were amended as necessary. Complete copies of the schedules are available from the Clerk of the Court. The primary assets of the bankruptcy estate, their estimated values are reflected in the schedules. The values contained in the schedules are those that the Debtor believe reflect the actual market value of the assets, should they be sold or auctioned in a liquidation scenario. These values are not book values based on purchase price as may be reflected elsewhere.

### b. Summary of the Plan of Reorganization

Debtors shall, as Reorganized Debtors, continue to exist after the Effective Date as legal entities organized in their respective state without any prejudice to any right to alter or terminate such existence under applicable state law.

This Plan provides 100% payment to all Allowed Claims over a five (5) year period. The priority claims to the taxing authorities, if any, will also be paid in full on the Effective Date. They are estimated at $0. Unsecured creditors with claims of professional fees will be paid 100% of their claims in one single lump sum payment to be made within 180 days of the Effective Date.

### c. Administrative and Priority Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims have not been classified and thus are excluded from the classes of claims and equity interests set forth in section (d) below. Administrative claims are the claims allowed under § 503(b) of the Bankruptcy Code for administration of these bankruptcy cases.

All final requests for payment of professional fee claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than 90 days after the Effective Date. Retained Professionals shall provide the Debtors with a reasonable and good faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtor

before and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date and shall provide such estimate no later than five Business Days prior to the anticipated Effective Date. If the Retained Professional does not provide an estimate, Debtors may estimate the amount of unpaid and unbilled fees and expenses. The total estimated amount shall be deposited into the Retained Professional's trust account at least two Business Days prior to the Effective Date. The funds held in the trust account shall be the property of the estates of the Debtors or Reorganized Debtors. When all professional fee claims allowed by the Bankruptcy Court have been paid in full pursuant to one or more final orders of the Bankruptcy Court, any remaining funds held in trust shall be turned over to the Reorganized Debtor without any further notice to or action, order, or approval of the Bankruptcy Court or any other entity. Alternatively, under SBRA, the Debtor may propose annual installment payments over the three (3) year term of the Plan.

Holders of Administrative Claims may include, without limitation, Wiley Law Group PLLC (former counsel) for professional fees in the estimated amount of $25,000; Freeman Law, PLLC in the estimated about of $50,000, and the Subchapter V Trustee estimated at $5,000.

After the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Retained Professional in the ordinary course of business without any further notice, to or action, order, or approval of, the Bankruptcy Court, should any serves be rendered.

All Statutory Fees that become due and payable prior to the Effective Date shall be paid by the Debtor within thirty (30) days after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable and file any reports as applicable. The Reorganized Debtor shall remain obligated to pay the quarterly fees to the United States Trustee until the Chapter 11 cases are converted, dismissed, or a final decree is issued, whichever occurs first.

Except to the extent that a holder of an Allowed Claim of the type described in §
507(a)(8) of the Bankruptcy Code has been paid prior to the Effective Date or agrees to a less favorable
treatment, in full and final satisfaction compromise, settlement, release, discharge of, and in exchange
for, each such Allowed Claim and each Holder of such Allowed Claim shall be treated in accordance
with the terms set forth in 1129(a)(9)(C) of the Bankruptcy Code and shall receive annual Cash
payments commencing on the first anniversary of the Effective Date to pay the aggregate amount of
such Claim within five years of the Petition Date. However, the Debtor and Reorganized Debtor shall
have the right to pay any such priority tax claim, or any remaining balance, in full, at the time on or
after the Effective Date, without premium or penalty. All priority tax claims that are not due and
payable on or before the Effective Date shall be paid in the ordinary course of business as such
obligations become due. The total estimated priority tax claims for Debtor are $-0-.

### d.  Summary of Treatment of Claims and Equity Interests

#### i.  Classification of Claims and Equity Interests (Claims are Consolidated for Both Earthsnap and Ralls).

| Class | Description | Status Under Plan | Treatment | Voting Status |
|---|---|---|---|---|
| 1 | PlantSnap, Inc. and DEJ Partners, LLC[1] | Unimpaired | Paid 100% of claim | Not Applicable |
| 2 | Secured Claim of Alley Bank | Unimpaired | Paid per terms | Not Applicable |
| 3 | Claim of Brian Funk | Unimpaired | Paid per terms | Not Applicable |
| 4 | Unsecured Claims-POC Timely Filed | Impaired | Paid 5 years in annual installments | Not Applicable |
| 5 | General Unsecured Claims - Scheduled but no POC | Impaired | Paid 5 years in annual installments | Not Applicable |
| 6 | Equity Interest of Debtor | Unimpaired | Retain stock | Not Applicable |

#### ii.  Treatment of Claims and Equity Interest

---

[1] Includes claim of Peter W. Thomas.

1.    **Class 1: Claims of PlantSnap, Inc. and DEJ Partners, LLC**[2]

PlantSnap, Inc. and DEJ Partners, LLC, collectively, will have an Allowed Claim for the principal amount of $2.5 million.  Such claim shall be paid 100% payable over 5 years.

2.    **Class 2: Secured Claim of Ally Bank**

Ally Bank will have an Allowed Secured Claim per existing terms (Claim #5).

3.    **Class 3:  Claim of Brian Funk**

Brian Funk will be paid the Allowed Amount of his Claim (Claim #9).

4.    **Class 4: Unsecured Claims (POC Timely Filed)**

The following unsecured claims will be paid their Allowed Amount over five years in annual installments, unless otherwise specified treatment:

(1)  Provectus IT, Inc.;
(2)  Amazon Web Services, Inc.;
(3)  Google, LLC;
(4)  HI Investment, LLC. (Estimated at $0 based on status as 14% equity interest holder.  since the retention of interest in 14% of Debtor exceeds the claim. See Class 9 treatment.)
(5)  Discovery Bank;
(6)  American Express National Bank;
(7)  JPMorgan Chase Bank, N.A. s/b/m/t Chase Bank USA, N.A.;
(8)  Midland Credit Management, Inc.; and
(9)  Bank of America N.A.

5.    **Class 5: General Unsecured Creditors-Scheduled but no POC.**

Majestyk Contingent Disputed (EarthSnap Schedule Amount $54,500.00**)**. To be amended and scheduled undisputed at $90,687.50 **to be paid over 5 years**. Paid on same terms of Class 6.

6.    **Class 6:  Equity Interests of Eric Ralls and H1 Investment**

This class consists of the holders of the of equity interest. These claims will be satisfied by the retention of this interest. This class is non-voting as insiders.

---

[2] Also includes claim of Peter W. Thomas.

**12. Executory Contracts and Leases**

To the extent that the Term Sheet between and among Debtors, PlantSnap, and DEJ Partners constitutes an executory contract, it will be rejected pursuant to this plan. PlantSnap and DEJ Partners shall be pursuant to the terms of this plan as noted above.

**13. Injunction**

In addition to funds of the Debtors, the funding of this plan is achieved through payments from third parties that have signed a Restructuring Support Agreement. For the term of this plan, and notwithstanding Section 12.c. below, as long as Debtors have not engaged in conduct creating an incurable default, all parties are enjoined from seeking to enforce any claims against any such partes. Those parties include, in addition to the Debtors, **Digital Earth Media, Inc.,** Earth.com**, Inc.,** Metaversal Knowledge, Inc., and Greenmind, LLC.

**14. Claims Objections**

Claims objections must be filed no later than 60 days after the order confirming the Plan is entered. The Court, on motion by a party in interest, may extend the deadline. Any such motion must be filed no later than 60 days after the order confirming the plan is entered.

Except as otherwise provided herein or as agreed to by the Reorganized Debtor, all Proofs of Claim filed after the applicable claims bar date (regular claims and government) shall be deemed disallowed in full and expunged as of the Effective Date, forever barred, estopped, and enjoined from assertion.

On or after the Effective Date, except as provided in the Plan of Confirmation Order, a Proof of Claim may not be amended without prior authorization of the Bankruptcy Court and the Reorganized Debtor. Any unauthorized amended Proof of Claim shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court; provided that the foregoing shall not apply to Administrative Claims.

**15. Confirmation Procedure**

     **a.**      **Hearing**

A hearing has been scheduled for _____.m. (Central Time), before the Honorable Joshua Searcy, 110 North College Ave., 9th Floor, Tyler, Texas 75702, to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court.

     **b.**      **Procedure for Objecting**

Any objection to confirmation of this Plan must: a) be in writing, b) conform to the applicable Bankruptcy Rules, c) be filed with the Bankruptcy Court and served so as to be actually received on or before _____("Confirmation Objection Deadline"), by (i) counsel for the Debtor, Gregory W. Mitchell, Freeman Law, PLLC, 7011 Main Street, Frisco, Texas 75034; and ii) the United States Trustee, 110 N. College Ave., Suite 300, Tyler, Texas 75702-7231.

Unless an objection is timely filed and served by the Confirmation Objection Deadline, such objection may not be considered by the Bankruptcy Court at the Confirmation Hearing.

     **c.**      **Requirements for Confirmation**

The Bankruptcy Court will confirm the Plan only if it meets all applicable requirements of section 1129 of the Bankruptcy Code, as modified under SBRA. Among the requirements for confirmation is that the Plan be: a) accepted by all Impaired Classes of Claims and Equity Interests or, if rejected by an Impaired Class, that the Plan distribute the equivalent of at least three years of disposable income, "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class under SBRA; and b) feasible. The Bankruptcy Court must also find that a) the Plan has classified Claims and Equity Interests in a permissible manner; b) the Plan complies with the other technical requirements of Chapter 11 of the Bankruptcy Code; and c) the Plan has been proposed in good faith. The Debtors believe that the Plan complies, or will comply, with all such requirements.

### d.        Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code requires the Plan to place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such Class. The Plan creates separate Classes to deal respectively with the various claims and interests. The Debtors believe that the Plan's classifications place substantially similar Claims and Equity Interests in the same Class and this meet the requirements of section 1122 of the Bankruptcy Code.

### e.        Impaired Claims or Equity Interests

Section 1124 of the Bankruptcy Code provides that a Class of Claims or Equity Interests may be Impaired if the Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Equity Interests. Holders of Claims or Equity Interests that are Impaired (except insiders under obsolete cramdown rules) are entitled to vote on the Plan. Holders of Claims that are not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. SBRA has rendered impairment or lack thereof in any event not relevant since consent of at least one impaired class is no longer required. Therefore, the significance of finding "impairment" or "insiders" is now immaterial.

### f.        Eligibility to Vote on the Plan

Unless otherwise ordered by the Bankruptcy Court, only Holders of Claims in Classes 1, 2, 3,4, 5, and 6 may vote on the Plan. In order to vote on the Plan, you must hold a Claim in Classes 1-6.  Debtors will only solicit votes from Holders of Claims that are entitled to vote. Again, the Plan may be confirmed whether or not you consent.

### g.        Voting Deadline

The deadline to submit the voting ballot is_____.

In order for the ballots to count, it must be complete and delivered timely to: Gregory W.

Mitchell, Freeman Law, PLLC, 7011 Main Street, Frisco, Texas 75034. Any legible ballot that is timely received from a party entitled to vote, that contains sufficient information to permit the identification of the party casting the ballot, and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection. The form of Ballot is attached as **Exhibit I**.

**h.** **Acceptance of the Plan**

Prior to SBRA, in order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan. Also, prior SBRA, at least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Plan. Under SBRA, this requirement of at least one impaired class voting to accept the Plan is no longer required. Notwithstanding, the Debtor urges that you vote to accept the Plan, since that greatly assists in the confirmation procedure on meeting the other requirements.

**16. Provisions Governing Distributions**

**a. Method of Payment**

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or electronic wire.

**b. Distribution Agent**

The Reorganized Debtor may employ a Distribution Agent. Should the Reorganized Debtor employ a Distribution Agent, the Distribution Agent shall be empowered to a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; b) make all distributions contemplated under the Plan; c) employ professionals to represent it with respect to its responsibilities; and d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the

Distribution Agent to be necessary and proper to implement the provisions of the Plan. Reasonable fees and expenses incurred by the Distribution Agent after the Effective Date shall be paid by the Reorganized Debtor. The Distribution Agent shall not be required to give bond or surety or otherwise provide security for the performance of its duties unless ordered by the Bankruptcy Court.

### a. Distributions

Distributions shall be made to the Holders of Allowed Claims after the Effective Date a) to the address of each such Holder as set forth in the Debtor' Books and Records (or if the Debtor have been notified in writing, on or before the date that is 10 Business Days before the Effective Date, with a 30 day cure period,  of a change of address, to the changed address) or in the Claims registers as of the date of the Confirmation Hearing or (b) on any counsel that has provided notice of representation or appeared in the Chapter 11 Cases on the Holders Behalf; provided that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in, as applicable, any Proof of Claim filed. If no Proof of Claim has been filed, then the address set forth in the Schedules. Notwithstanding anything to the contrary in the Plan, the Debtor, the Reorganized Debtor, and Distribution Agent as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

### b. Rule for Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the Reorganized Debtor and the Holder of a Disputed Claim, or as set forth in a final order, no partial payments and partial distributions should be made with respect to a Disputed Claim until the Disputed Claim has become an Allowed Claim, or has otherwise been resolved by settlement or final order.

### c. Undeliverable Distributions and Unclaimed Property

In the event that either (a) a distribution to any Holder is returned as undelivered or (b) the Holder of an Allowed Claim or Allowed Interest does not respond to a request for information necessary to facilitate a particular distribution, no distribution to such Holder shall be made unless

and until the it has been determined that the then-current address of such Holder or received the necessary information to facilitate a particular distribution, at which time  the distribution shall be made without interest or other accruals; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the date that is six months after the later of (a) the Effective Date and (v) the date of the distribution. After such date, all unclaimed property of interests in property shall revert to the Reorganized Debtor automatically and without a need for a further order by the Bankruptcy Court (notwithstanding any applicable local, state, federal, or foreign escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

### 17. Effect of Confirmation of the Plan

Except as provided in this Plan, the occurrence of the Effective Date of this Plan shall, and does hereby, act to discharge and release the Claims of all creditors of all interests against the Debtor and the Reorganized Debtor and shall be deemed to constitute a full and complete settlement with such creditors. The Plan constitutes, unless excluded by Order of this Court based on exception to discharge,  complete satisfaction, discharge, and release of all claims, causes of action of any nature whatsoever, including any interest accrued on claims of from and after the Petition Date, whether known or unknown, against, liabilities, liens on, obligations of, and rights against the Debtor or any of their assets, regardless of whether any of their assets shall have been distributed or retained pursuant to the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the occurrence of the Effective Date.

Confirmation of the Plan, however, shall not disturb the perfected liens on any class of secured creditors as provided for in this Plan. With respect to the classes of secured creditors holding a secured claim, such creditors shall retain their lien(s) securing such claims until such a time that the secured claim is satisfied.

### 18. Miscellaneous Provisions

#### a. Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtor, the Holders of Claims and Holders of Equity Interests, and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

#### b. Headings

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan.

#### c. Termination of Injunctions or Stays

Unless otherwise provided herein or in another order from the Bankruptcy Court, all injunctions or stays provided for in these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date shall terminate on the Effective Date, at which time the injunctions and stays set forth in this Plan shall take effect. Provided, however, the Confirmation of the Plan shall constitute an injunction against any action by any party that seeks to interfere with the Plan by, directly or indirectly.. This Court retains exclusive jurisdiction, in that regard, pursuant to authority granted under 11 U.S.C. §105 et seq.

#### d.  Amendment or Modification of the Plan

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtor, at any time before the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor has complied with sections 1125 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the

Claim of such holder. Prior to the Effective Date, the Debtor may make appropriate technical non-material modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of holders of Claims or Equity Interests.

### e. Severability

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provisions in this Plan are invalid, void, or unenforceable, such provision shall be invalid, void, or unenforceable with respect to the Holder or Holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void, or unenforceable. The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require re- solicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

### f. Revocation or Withdrawal of the Combined Plan and Disclosure Statement

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date. If the Debtors revoke or withdraw the Plan, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claim by or against the Debtors and the Estates.

### g. Exhibits and Schedules

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

### h. No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

### i. Successors and Assigns

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

### j.  Implementation

The Debtor and Reorganized Debtor, as applicable, shall take all steps and execute all documents necessary to effectuate the provisions contained in this Plan.

### k.  Inconsistency

In the event of any inconsistency among the Plan and any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

**Dated: April 13, 2025**                                    Respectfully submitted,

FREEMAN LAW, PLLC

*/s/ Gregory W. Mitchell*
Gregory W. Mitchell
Texas Bar No.: 00791285
7011 Main Street
Frisco, Texas  75034
(214) 924-3124 – Telephone
(974)432-7540 – Facsimile
gmitchell@freemanlaw.com
**Counsel for the Debtors**