Gregory W. Mitchell
FREEMAN LAW, PLLC
1412 Main Street
Suite 625
Dallas, Texas 75202
(972)463-8417 – Office
(972)432-7540 – Facsimile
State Bar ID: 00791285

PROPOSED ATTORNEYS FOR DEBTORS

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| In re: **Earthsnap, Inc.** § | | Case No. 24-60363 |
| § | | |
| *Debtor* § | | Chapter 11, Subchapter V |
| § | | |
| § | | (Jointly Administered) |
| | | |
| In re: Eric Ralls § | | Case No. 24-60504 |
| § | | |
| *Debtor* § | | Chapter 11, Subchapter V |

## DEBTORS' MOTION FOR RECONSIDERATION REGARDING ORDER CONVERTING CASES TO CHAPTER 7

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT BEFORE CLOSE OF BUSINESS ON MAY 26, 2025, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

COME NOW Debtors Earthsnap, Inc. ("**Earthsnap**") and Eric Ralls ("**Ralls**") (Earthsnap and Ralls collectively "**Debtors**" or individually a "**Debtor**"), Debtors in the above bankruptcy proceeding, and file this their *Debtors' Motion for Reconsideration Regarding Order Converting Cases to Chapter 7* (the "**Motion**"). In support of the Motion, Debtors assert as follows:

## I. MOTION FOR RECONSIDERATION

1. Pursuant to Fed. R. Civ. P. 59, as altered and incorporated into bankruptcy cases by Fed. R. Bankr. P. 9023, Debtors respectfully request that the Court reconsider its *Order Granting Motion to Convert Subchapter V, Chapter 11 Cases Into Chapter 7 Bankruptcy Cases* (the "**Order**"), pursuant to which it granted the *Joint Motion to Convert Chapter 11 Cases* (the "**Motion to Convert**") filed by Plantsnap, Inc. ("**Plantsnap**"), DEJ Partners, LLC ("**DEJP**") (Plantshap and DEJP collectively, "**Movants**" or "**Petitioning Creditors**").

2. For numerous reasons, the Court should withdraw the Order and grant Debtors a reasonable period of time – albeit a "short leash" – to attempt to confirm a plan.

3. As described in more detail hereinbelow, the Court should reconsider its decision to convert these cases to chapter 7 based on one or more of the following reasons:

   (1) Unusual circumstances undeniably led to most of the bases cited by the Court in its Order for converting the case;

   (2) Earthsnap, along with Earth.com, its sister company, are already in a position to pay all creditors 100% of amounts owed over a 5-year period. The companies' revenue continues to grow monthly, which makes the companies more valuable every month. According to a recent evaluation of the value of the companies, the current value of the combined Earth.com and EarthSnap is approximately $18 million, excluding the Earth.com domain name. That valuation increases to almost $40 million in the future.[1]

   (3) The Court's Order will have the effect of the elimination of competition by aggressive creditors who stand only to benefit themselves without any consideration of the best interests of the overall creditor body and the estates.

---

[1] *See* Valuation Report attached hereto as **Exhibit A.**

(4) Allowing the Debtors an opportunity to confirm a plan will likely avert the necessity of the estate bringing a professional negligence case against Debtors' former counsel – someone who is in a vulnerable position given his life circumstances.

4. Each of these bases for reconsideration will be analyzed in turn.

## II. ARGUMENT

### A. Unusual Circumstances

5. 11 U.S.C. § 1112(b) governs the involuntary conversion and dismissal of subchapter V cases. *Cal. Palms Addiction Recovery Campus, Inc. v. Vara (In re Cal. Palms Addiction Recovery Campus, Inc.)*, 87 F.4th 734, 741 (6th Cir. 2023); *In re Lashley*, 664 B.R. 408, 415 (Bankr. W.D. Ky. 2024). The Court must first determine whether there is "cause." *In re Pure Repair & Trucking, LLC*, 658 B.R. 895, 903 (Bankr. S.D. Ohio 2024). If the Court finds that cause exists, it must then consider whether the debtor has established facts showing unusual circumstances such that neither conversion or dismissal is in the best interests of the creditors or the estate. *Id.*

6. As set forth in § 1112(b)(2), the unusual circumstances exception requires the following:

> (1) the Court finds the existence of unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate;
>
> (2) that there is a reasonable likelihood of confirmation of a plan within a reasonable period of time;
>
> (3) there is a reasonable justification for the acts or omissions that gave rise to a finding of cause;
>
> (4) the acts or omissions underlying the finding of cause will be cured within a reasonable time.

11 .S.C. § 1112(b)(2); *In re Fall*, 405 B.R. 863, 870 (Bankr. N.D. Ohio 2009).

    a. <u>Existence of Unusual Circumstances</u>

7. "Unusual circumstances" is not defined in § 1112(b), but it contemplates conditions that are not common in chapter 11 cases, such that all parties are better off without conversion or dismissal. *In re Fall*, 405 B.R. at 870; *In re Aurora Memory Care, LLC*, 589 B.R. 631, 642 (Bankr. N.D. Ill. 2018).

8. It is undisputed that Debtors' former counsel ("**Counsel**") failed to demonstrate even a basic level of competence as it relates to this case.

9. In or around November and December, 2024, Counsel was hospitalized for an extended period as a result of an addiction-related illness.

10. Additionally, in or around January, 2025, Counsel experienced the unexpected death of a son.

11. Uncontroverted evidence of this was established at the hearing on the Motion to Convert. Perhaps more importantly, this Court's Order acknowledges the issues with Counsel.

12. Among the bases cited by this Court in granting the Motion to Convert, the Court cites to the following – all of which are attributable to the inadequacy of Counsel:

> (1) The failure to file an answer/response to the Motion to Convert. *See* p. 2 of the Order ("The Court finds that no objection or other written response to the Motion has been timely filed by any party");
>
> (2) The late filing of monthly operating reports. *See* p. 6 of the Order;
>
> (3) The failure to file the documents described in 11 U.S.C. §1187(a). *See* p. 7 of the Order;
>
> (4) Issues related to Debtor-in-Possession Bank Accounts. *See* p. 8 of the Order;
>
> (5) Failure to comply with Court Orders; and
>
> (6) Inability to Confirm a Plan.

13. As a general matter, for many months following the filing of these cases, Counsel never emailed Debtors electronic versions of any filings in these cases. It was not until November, 2024, that Debtors learned that Counsel had incorrectly listed Debtors' address as "6691 Park

Slope" instead of "6961 Park Slope". Therefore, in addition to not getting electronic versions from Counsel, I was not getting hard copy filings through the mail. It was not until December, 2024, that Counsel's office update my address with the Court. *See Declaration of Eric Ralls in Support of Motion for Reconsideration*, at ¶3 attached hereto as **Exhibit B.**

14. Regarding the deadline to file a response to the Motion to Convert, the Debtors and/or their representatives were not made aware of any such deadline and therefore had no idea until the hearing on the Motion to Convert that no response had been filed. *See id.*, at ¶4.

15. Regarding the filing of monthly operating reports, the Debtors and/or their representatives timely provided information sufficient to prepare and file monthly operating reports. Debtors' counsel had stated from the outset that his office would take care of the filing of monthly operating reports. *Id.*, at ¶5.

16. In this regard, the Court even acknowledged the issues with Counsel, stating:

→ "[c]ertainly the Court is sympathetic to the challenges Debtors' counsel has faced," (p. 7 of the Order); and

→ "The Court has stated before, and will do so again here, that it is sympathetic to Debtors' counsel's challenges," (p. 17 of the Order)

but then dismissed them as a legitimate basis to establish unusual circumstances, pointing out that "these failures date from the inception of the case." But the problem with the Court's analysis is that issues with Counsel had also dated to the inception of the case. There is no evidence in the record that Debtors were aware of these deficiencies, and indeed there is considerable evidence that Counsel did not inform Debtors of any such deficiencies. Debtors provided Counsel with sufficient information as requested and relied on Counsel to timely file operating reports. It is unreasonable to simply assume that, without being notified by Counsel of any deficiencies, Debtors would have

reason to know or the ability to cure such deficiencies. Indeed, the Debtors and their representatives were not aware of such deficiencies.² *Id.*, at ¶6.

17. Therefore, the Court's reference to deficiencies early in the case serve as **support** for Debtors' position rather than a basis for rejecting Debtors' position. The Court's references **support** the existence of unusual circumstances – indeed since the beginning of the case. The Court's references **support** the existence of reasonable justification under Section 1112(b)(2)(B)(i). And the Court's references, combined with the Court's acknowledgement of actions taken by the Debtors after the hearing, **support** that deficiencies will be cured within a reasonable period of time fixed by the Court, thereby satisfying Section 1112(b)(2)(B)(ii).

18. Regarding the failure to file documents required by 11 U.S.C. §1187(a), once again, Debtors did not know, and had no reason to know without being told, of the requirement found in that section. Counsel did not inform Debtors of such requirement. ³ *Id.*, at ¶7.

19. Regarding issues related to debtor-in-possession bank accounts, once again Debtors relied on their Counsel with respect to these requirements. Debtors made Counsel perfectly aware of the situation regarding issues with setting up DIP accounts and obtaining bank statements. *Id.*, at ¶5, 8.

20. Additionally, Debtors made Counsel aware of the use of a management company to manage cashflow. Indeed, evidence introduced at the hearing on the Motion to Convert made clear that Counsel even assisted Debtors with the creation of Greenmind, LLC – the entity referenced in the Court's Order.⁴ *See also id., at* ¶9.

---

² Without such knowledge, it is also unreasonable to expect that Debtors and their representatives would know what deficiencies needed to be addressed at the hearing on the Motion to Convert without being told by Counsel.
³ Notably, the Court relied on the monthly operating report deficiencies, as well as the deficiencies related to obligations under 11 U.S.C. §1187, to justify conversion under both §1112(b)(4)(B) and (F).
⁴ *See* communication from Counsel reflecting his involvement with the creation of Greenmind, LLC, a copy of which is attached hereto as **Exhibit C**, along with a copy of the Greenmind Certificate of Formation reflecting Counsel as the "Organizer" and the initial registered agent.

21. Therefore, it is unreasonable to conclude that Debtors could have believed that such creation was improper or that further disclosure could have been required when their Counsel was fully aware of and participated in the creation of this entity. Contrary to the Court's finding in its Order, Greenmind, LLC was not created to avoid compliance, but rather to manage cashflow in order to avoid the aggressive collection tactics of Movants. *Id.*

22. In situations where the Debtors did learn of deficiencies, such deficiencies were immediately cured. For example, Debtors' Counsel had not informed Debtors or their representatives of the requirement to pay the fees of the Subchapter V Trustee. When Debtors learned of the issue at a status conference on or about December 17, 2024, they immediately reached out directly to Ms. Areya Aurzada – the Subchapter V Trustee – and paid the necessary fees. *Id.*, at ¶10. Indeed, on multiple occasions, when Debtors' representative questioned Counsel regarding certain potential administrative issues, Counsel repeatedly informed Debtors' representative that there was nothing to be concerned about because filings could always be amended later. *Id.*, at ¶6.

23. As a further basis for granting the Motion to Convert, the Court cites to failures on the part of the Debtors to comply with orders regarding discovery. But once again, Debtors were not aware of such orders, as Counsel never made them aware. *Id.*, at ¶11. Debtors were also not aware that Counsel had provided late discovery responses, as referenced in the Court's Order. Debtors later learned that Counsel had held up production of documents on the grounds that he would be filing for a protective order and that discovery would only be produced subject to such protective order. However, no protective order was ever filed. *Id.*

24. It bears repeating that Debtors had no way of knowing that they needed to produce evidence related to the failures cited in the Court's Order at the hearing on the Motion to Convert for the very reason that they were unaware of such failures. *Id.*, at ¶12.

25. To the extent that there could be any question regarding the inadequacy/incompetence of Counsel, Debtors sought an expert opinion from Mr. Bill Gameros, and he has opined Counsel demonstrated a gross degree of negligence in his conduct; that such conduct violated multiple rules of the Texas Disciplinary Rules of Professional Conduct, including:

> (1) **TEX. DISC. R. PROF. CONDUCT 1.01(b).** – regarding Counsel's neglect of the Debtors' cases and failure to carry out the obligations owed to clients;
>
> (2) **TEX. DISC. R. PROF. CONDUCT 1.03(A)** – regarding Counsel's failures to keep Debtors reasonably informed; and
>
> (3) **TEX. DISC. R. PROF. CONDUCT 1.03(B).** – regarding Counsel's failure to keep Debtors informed to the extent necessary to permit Debtors to make informed decisions.

Mr. Gameros cited to Counsel's unique circumstances he found himself in regarding health issues and the death of his son. A copy of Mr. Gameros' expert report is attached hereto as **Exhibit D**.

26. As a further example of "unusual circumstances," Debtors note the unusual position of the Petitioning Creditors as competitors of the Debtors. In yet another example of the incompetence of former Counsel for the Debtors, the Debtors were not able to introduce expert testimony establishing the competitive nature of the Petitioning Creditors. This Court should not be in the business of allowing businesses to eliminate competition by virtue of aggressive actions in a bankruptcy case. That is exactly what has occurred here. Attached as **Exhibit E** is a report analyzing the competitive nature of the business of the Debtors and Movants.

27. Additionally, attached as **Exhibit F** is a market report – entitled "Global Plant Identification Apps Market Size By Type, By Platform, By Functionality, By Geographic Scope And Forecast" – that specifically mentions Earthsnap as a "key player" (along with Plantsnap, one of the Movants), making further clear the competitive nature of the relationship between Debtors and Movants.

    b. <u>Reasonable Likelihood of Confirming a Plan</u>

28. In its Order, the Court found that the plan on file at the time of the hearing did not meet the requirements for confirmation. But the Court's analysis in this regard ignored the standard of Section 1112(b)(2) that the Debtors demonstrate that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time. In this regard, focus on the Debtors' prior plan is inappropriate given the fact that Debtors had already filed an amended plan before the Court issued its Order.

29. The Court even acknowledged the existence of the amended plan in its Order, but summarily dismissed it in a footnote – stating simply that "the amended plan has not yet been set for confirmation." The existence of an amended plan, however, goes directly to Debtors' burden under Section 1112(b)(2)(A). And further, in a small business chapter 11 – at least in the Eastern District (and at least based on the experience of undersigned counsel) – the standard procedure following the filing of a plan is for the Court to issue an *Order Conditionally Approving Debtor's Disclosure Statement; Fixing the Time for Filing Acceptances or Rejections of Debtor's Proposed Chapter 11 Plan of Reorganization and/or Objections to Confirmation of Proposed Plan and Setting Hearing to Consider Final Approval of Debtor's Disclosure Statement and Confirmation of Debtor's Proposed Chapter 11 Plan of Reorganization* (an "**Order Setting Confirmation Hearing**"). Moreover, in the experience of undersigned counsel, an Order Setting Confirmation Hearing in a small business case has historically been issued by the Bankruptcy Court in no more than 48 hours following the filing of a plan.

30. In this case, Debtors filed their amended plan on April 13, 2025 – **8 days before the entry of this Court's Order**. Therefore, it is unreasonable for the Court to have used the fact that a confirmation hearing had not been set as a basis for dismissing the importance of Debtors' filing of an amended plan. The Court should have issued an Order Setting Confirmation Hearing.

31. Debtors assert that the amended plan filed had a reasonable – if not substantial – likelihood of being confirmed, and the Court failed to even engage in an analysis of the likelihood of

the amended plan being confirmed. Debtors provided evidence that the amended plan is confirmable, including the fact that all creditors would be paid 100%. Additionally, the amended plan cured the previous plan's failure to include a liquidation analysis.

    c. <u>Reasonable Justification</u>

32.    The very nature of the unusual circumstances establishes the reasonable justification required under 11 U.S.C. §1121(b)(2)(B)(i).

33.    The actions/inactions of Counsel make clear that the Debtors and/or their representatives had no culpability in the deficiencies found by the Court that formed the basis of its Order.

    d. <u>Cure Within a Reasonable Period of Time</u>

34.    The final component of satisfying the requirements of Section 1112(b)(2) require that deficiencies found "will be cured within a reasonable period of time fixed by the court."

35.    Several deficiencies found by the Court in its Order had already been cured by the time the court issued its Order. Debtors assert that they would be able to cure all other deficiencies "within a reasonable period of time fixed by the court." *See* **Exhibit B**, at ¶13.

36.    Debtors respectfully request that the Court give them such reasonable period of time to cure any remaining deficiencies found to exist.

**B. <u>Imminent Success</u>**

37.    Earthsnap, along with Earth.com, its sister company, are collectively on the verge of an explosion of success that will render it much more likely that all creditors will get paid in full – while still maintaining the companies as going concerns.

38.    Indeed, Earth.com has already reached a level of success that is substantially jeopardized by conversion to Chapter 7.

39. As explained at the hearing, both Earthsnap and Earth.com are owned by a third party, Digital Earth Media. Ralls holds the majority of the stock of Digital Earth Media, and if Movants have their way, that stock will simply be liquidated, thereby eliminating competition.

40. The imminent success is supported by a valuation report created to substantiate the tremendous harm that would befall both Earthsnap and Earth.com should the chapter 7 cases proceed. That report is attached hereto as **Exhibit A**. To be clear, once again, the only beneficiaries to the failure of Earthsnap and Earth.com would be their competitors – the Movants.

C. <u>Elimination of Competition</u>

41. As noted elsewhere herein, if Movants are successful at forcing the conversion of Debtors to chapter 7, the winners will be Movants, the Debtors' competition.

42. Chapter 11 was not intended to provide businesses' competitors with a forum in which to ensure their demise.

43. The competitive nature of the businesses of Debtors and the Petitioning Creditors is addressed above and further supported by Exhibits E and F, as discussed above in the context of "unusual circumstances." However, the competitive nature of the Debtors and the Petitioning Creditors serves as an independent reason that this Court should reconsider its decision converting Debtors' cases to chapter 7.

44. In the case of *In re E.S. Bankest, L.C.*, the court therein, in considering a motion to convert, held that a movant's motivation in bringing the motion should be considered in making its determination. In that case, the Court found that the creditor's motivation in prosecuting the motion to convert was a litigation tactic rather than an effort to maximize recovery by the estate and used that as a basis for denying the motion to convert. *See In re E.S. Bankest, L.C.*, 321 B.R. 590 (Bankr. S.D. Fla., 2005).

45. This suggests that a court should evaluate whether the creditor's interests extend beyond financial recovery and could potentially harm the debtor's business. A court should therefore scrutinize a creditor's motivations to ensure they align with the best interests of the estate and other creditors – something this Court did not do despite the evidence of the competitive nature of the relationship between the Debtors and the Movants.

46. Here, the Movants' motivations are clearly bent towards putting the Debtors out of business – which Movants failed to establish is in the best interests of the estate and all the creditors. Indeed, Movants failed entirely to put on evidence of anything other than alleged bad acts of the Debtors and their representatives.

### D. Avoidance of Professional Negligence Claim

47. While this Court is not in the business of protecting attorneys from their misconduct, the simple truth is that giving these Debtors the opportunity to confirm a plan could have the result of preventing the pursuit of a claim for professional negligence.

48. While Counsel's circumstances were unfortunate – as has been acknowledged by everyone involved (including this Court) – the Debtors may have no choice but to pursue a claim for professional negligence resulting from Counsel's actions – actions that could serve to eliminate millions of dollars in value.

WHEREFORE, for the reasons stated herein, after notice a hearing, Debtors respectfully request that the Court reconsider its order converting Debtors' cases to chapter 7, and upon reconsideration, withdraw its Order. Debtors request such other and further relief to which they may be entitled.

**DATED this 5th day of May, 2025.**

> Respectfully submitted,
>
> **FREEMAN LAW, PLLC**

7011 Main Street
Frisco, Texas 75034
(972) 463-8417 – Office
(972) 432-7540 – Facsimile
gmitchell@freemanlaw.com

By: **/s/ Gregory W. Mitchell**
 Gregory W. Mitchell
 State Bar No. 00791285
ATTORNEY FOR DEBTORS

## CERTIFICATE OF SERVICE

I hereby certify that on this **5th day of May, 2025**, a copy of the foregoing motion was served on all parties receiving notice via the Court's ECF system.

**/s/ Gregory W. Mitchell**
Gregory W. Mitchell
Attorney for Debtors