**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| In re: Earthsnap, Inc., | § | Case No. 24-60363 |
| | § | |
| Debtor, | § | Chapter 11, Subchapter V |
| | § | (Jointly Administered) |
| | § | |
| | § | |
| In re: Eric Ralls, | § | Case No. 24-60504 |
| | § | |
| Debtor. | § | Chapter 11, Subchapter V |

**EXHIBIT D**

**DECLARATION OF CHARLES W. GAMEROS, JR.**

TO THE HONORABLE JUDGE OF SAID COURT:

In accordance with 28 U.S.C. § 1746, I, Charles W. Gameros, Jr., hereby declare under penalty of perjury that the following statements are true and correct:

1. My name is Charles W. Gameros, Jr. I am over the age of 18 years, have never been convicted of a felony and am competent in all ways to make this Declaration. The matters and facts stated herein are within my personal knowledge and are true and correct.

**QUALIFICATIONS**

2. I am a 1987 graduate of the United States Military Academy at West Point with a Bachelor of Science degree. I graduated from the Johnson Graduate School of Management at Cornell University in 1995 with a Master's in Business Administration. I graduated from the Cornell Law School in 1996 with a Juris Doctor.

3. I practice law through my professional corporation, Charles W. Gameros, Jr., P.C., a partner in Hoge & Gameros, L.L.P. I am an attorney at law duly admitted and licensed to practice before the courts of the State of Texas. I was so licensed on November 1, 1996. I am admitted to

practice in the United States District Court for the Northern, Eastern, Southern and Western Districts of Texas, the United States District Courts for the Eastern and Western Districts of Arkansas, the Western District of Tennessee, the Eastern and Western Districts of Oklahoma, the District of New Mexico, the Southern District of Indiana, the Northern District of Illinois, and the District of Colorado and the United States Court of Federal Claims as well as the United States Court of Appeals for the Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits, and the Supreme Court of the United States. My resume is attached as **Exhibit "A."**

4. I served on the State Bar of Texas Grievance Committee for six years and was the Chairman of the Dallas Subcommittee when my last term expired. I serve as legal ethics counsel for attorneys and law firms and defend attorneys in grievance complaints and other similar matters. I served as the Chairman of the Dallas Subcommittee of the Supreme Court of Texas Unauthorized Practice of Law Committee for over twenty (20) years. I was recently appointed to the State Committee of the Supreme Court of Texas Unauthorized Practice of Law Committee.

5. In preparing my opinions in this matter, I have applied my education, training, and experience as a Texas attorney for the past 28 years, including, but not limited to, my experience in private practice, as an attorney on both sides of the civil and disciplinary docket, and frequent work with experts concerning attorney conduct issues in both malpractice settings and attorneys' fees disputes.

6. I have reviewed the February 12, 2025 Motion to Convert, the April 21, 2025 Order Granting the Motion to Convert, and three transcripts of hearings in this matter.  I also conducted brief interviews of the Debtors on May 2 and 5, 2025.

## OPINIONS

7. Based on my on my expertise in the area of professional responsibility, legal ethics and attorney discipline, I have been retained by Debtors' counsel in the above-captioned matter to provide my expert opinions on various matters.

8. In this Declaration, I will provide my opinions that the attorney-client relationship between Mr. Wiley and the Debtors imposed duties upon Mr. Wiley that:

   a. prohibited him from continuing his representation of the Debtors in the pending bankruptcy matter when his personal life precluded effective representation;

   b. obligated him to keep the Debtors informed as to the status of the pending bankruptcy matter; and

   c. obligated him to explain to the Debtors what was happening in the pending bankruptcy matter so they could make informed decisions.

9. I am not providing an opinion as to whether or not the Debtors can present a confirmable plan or otherwise meritoriously oppose the Motion to Convert. Instead, it is my opinion that Mr. Wiley's failures to discharge his duties as outlined above precluded the Debtors from having the opportunity to present a confirmable plan or otherwise meritoriously oppose the Motion to Convert. It is my further opinion that Mr. Wiley's personal challenges and other failures created, in part, the circumstances that formed part of the basis for both the Motion to Convert and its subsequent granting by the Court.

10. **TEX. DISC. R. PROF. CONDUCT 1.01(b).**[1] During the pending bankruptcy matter, Debtors' counsel, Mr. Wiley, experienced a host of personal issues that included addiction,

---

[1] TEX. DISC. R. PROF. CONDUCT 1.01(b) ("In representing a client, a lawyer shall not: (1) neglect a legal matter entrusted to the lawyer; or (2) frequently fail to carry out completely the obligations that the lawyer owes to a client or clients.").

**DECLARATION OF CHARLES W. GAMEROS, JR.**                                                                                    **Page 3 of 4**

hospitalization, and the death of his son. These events precipitated a failure to file an answer/response to the Motion to Convert, late filing of monthly operating reports, failure to file required documents and other basic missteps that adversely impacted the Debtors' procedural posture in the Chapter 11 case. Debtors were also unaware of the gravity of the situation at the time.

11.     **TEX. DISC. R. PROF. CONDUCT 1.03(A).**[2] During the pending bankruptcy matter, Mr. Wiley failed to informed Debtors of basic activity in the case. Debtors, without knowing what was going on, could not know of the importance of procedural developments or ask for pertinent information. This failure contributed to Debtors' failure to perform or timely perform required activities in the Case.

12.     **TEX. DISC. R. PROF. CONDUCT 1.03(B).**[3] During the pending bankruptcy matter, Mr. Wiley failed to informed Debtors of critical activity in the case. This lack of information precluded the Debtors' exercise of informed decision making. In other words, without knowing what they needed to do, they simply could not do it. They reasonably relied on the information — and here the lack thereof — from their lawyer. Although unintended, the effect is that when critical events were transpiring in the Case, the Debtors were unaware of what needed to be done and, as a result, failed to take or direct proper action.

13.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 5, 2025.

/s/*Charles W. Gameros, Jr.*
**CHARLES W. GAMEROS, JR.**

---

[2]     TEX. DISC. R. PROF. CONDUCT 1.03(a) ("A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.").

[3]     TEX. DISC. R. PROF. CONDUCT 1.03(B) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.).

**CHARLES WILLIAM GAMEROS, JR.**
6116 N. Central Expressway, Ste. 1400
Dallas, Texas 75206
(214) 765-6002

| | | |
|---|---|---|
| EDUCATION: | **CORNELL UNIVERSITY** | **Ithaca, New York** |

**Cornell Law School**
*Juris Doctor*, May 1996
Founding Editor-in-Chief, liibulletin-ny (Cornell Legal Information Institute's online journal)
Editor, CORNELL LAW REVIEW
Moot Court Board, upper class moot court semi-finalist, 1995
Summer Law Clerk, U.S. District Judge Jerry Buchmeyer, 1994     **Dallas, Texas**

**Johnson Graduate School of Management**
*Master of Business Administration*, January 1995
Independent consultant (clients included Technology Group of Corning, Inc.)     **Corning, New York**

**UNITED STATES MILITARY ACADEMY**     **West Point, New York**
*Bachelor of Science*, May 1987 (Dean's List)
Debate Team (4 years, Cadet-in-Charge 1986-1987)

ADMISSIONS: Texas, 1996; Northern District of Texas, 1997; Eastern District of Texas, 1999; Southern District of Texas, 2000; Western District of Texas, 2001; Eastern and Western Districts of Arkansas, 2007; Western District of Tennessee, 2007; Northern District of Illinois, 2009; Western District of Oklahoma, 2010; Eastern District of Oklahoma, 2015; District of New Mexico, 2017; Southern District of Indiana, 2019; District of Colorado, 2021; U.S. Court of Federal Claims, 2015; Fifth U.S. Court of Appeals, 2003; Seventh U.S. Court of Appeals, 2009; Tenth U.S. Court of Appeals, 2014; Sixth U.S. Court of Appeals, 2016; Eleventh U.S. Court of Appeals, 2018; U.S. Supreme Court, 2015.

PROFESSIONAL ACTIVITIES: Chair, District 6A Unauthorized Practice of Law Subcommittee of the Supreme Court of Texas, 2001 – 2024; Former Chair, District 6A Grievance Committee for the State Bar of Texas, 2002 – 2008; Former Board Member, DBA Trial Skills Section, Associate, Higginbotham Inns of Court 2001 – 2002.

EXPERIENCE:
2002 - Present    **HOGE & GAMEROS, L.L.P.**
**Partner**     **Dallas, Texas**
Litigation partner specializing in complex commercial litigation in state and federal courts as well as arbitrations.
- Representations in State and Federal courts throughout Texas include oil & gas, real estate, banking, corporate governance, commercial disputes, arbitrations (FINRA, JAMS, ICDR, and AAA), bankruptcy adversary proceedings, securities, professional responsibility, as well as prosecution of unauthorized practice of law matters.
- Selected by D MAGAZINE as one of the Best Lawyers in Dallas Under 40, 2002, 2004; Texas Rising Star, 2004; and Texas Super Lawyer, 2004, 2007 — 2025.

2000 - 2002    **LYNN TILLOTSON & PINKER, L.L.P.**
**Associate**     **Dallas, Texas**
Litigation associate for trial and litigation boutique specializing in complex commercial litigation. Working for own clients without supervision or directly with name partners for all cases with significant responsibility and contact with clients as well as opposing counsel.
- Second chaired plaintiff and defense trial teams in jury and non-jury trials as well as securing and preventing temporary injunctive relief; two take nothing jury verdicts.

1999 – 2000    **ARTER & HADDEN, L.L.P.**
**Associate**     **Dallas, Texas**
Litigation associate for national full service law firm specializing in commercial litigation and corporate securities actions. Working without supervision or directly with partners for all cases with significant responsibility and contact with clients as well as opposing counsel.
- Second chaired defense trial team with $17MM at issue resulting in preliminary $4MM judgment.

1996 - 1999    **BICKEL & BREWER**
**Associate**     **Dallas, Texas**
Litigation associate for Dallas-based litigation boutique. Worked directly with name partner for majority of cases with significant responsibility and contact with clients as well as opposing counsel.
- Secured and enforced judgment in favor of client in excess of $3.2 million through binding arbitration.

**UNITED STATES ARMY - 24TH INFANTRY DIVISION (MECHANIZED)**
1991-1992    **Battalion Assistant Operations Officer — Captain**     **Fort Stewart, Georgia**
Developed tactical training and operations for a Rapid Deployment Force M1A1 tank battalion consisting of 554 soldiers and over 200 vehicles. Responsible for staff coordination and various briefings.
- Published article describing Gulf War experience titled *Scout HMMWV's and Bradley CFV's: Gulf War Provides a Comparison of Scout Vehicles and MTOES*, ARMOR, Sept. - Oct. 1991, at 21 - 25.

1990-1991    **Battalion Scout Platoon Leader — First Lieutenant**     **Kingdom of Saudi Arabia and Republic of Iraq**
Led 35 soldiers and 9 vehicles into combat in experimental reconnaissance unit. Responsible for battlefield intelligence gathering with heavy reliance on advanced and experimental, night vision technology and communications equipment.
<u>Operation Desert Storm</u>
- Awarded Bronze Star Medal for personal performance during combat actions in the Republic of Iraq.
- Led the attack of a battalion task force of over 200 vehicles; platoon conducted continuous pre-assault reconnaissance up to 30 miles inside Iraq, for the four days preceding ground invasion.
- Battalion received the Valorous Unit Award for exceptional performance in Operation Desert Storm.

1988-1989    **Tank Platoon Leader — Second Lieutenant**     **Fort Stewart, Georgia**

**EXHIBIT "A"**